UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEE VARELA, | No. 1:19-cv-00617-DAD-EPG |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| STATE FARM GENERAL INSURANCE COMPANY, | (Doc. No. 34) |
| Defendant. | |

Before the court is the motion for summary judgment filed by defendant State Farm General Insurance Company ("defendant" or "State Farm") on February 19, 2021. (Doc. No. 34.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, defendant's motion was taken under submission on the papers. (Doc. No. 35.) For the reasons explained below, the court will deny defendant's motion for summary judgment.

**FACTUAL BACKGROUND**

This action arises from a dispute between the parties over whether plaintiff's "all risk" insurance policy coverage extends to water damage caused by a broken plumbing pipe located underneath plaintiff's home. The factual background that follows is derived from the amended joint statement of undisputed material facts filed by defendant (Doc. No. 37 ("JUF")), plaintiff's response to defendant's joint statement of undisputed material facts (Doc. No. 38-2), plaintiff's

1

statement of disputed facts (Doc. No. 38-3 ("PSDF")), and defendant's reply to plaintiff's statement of disputed facts (Doc. No. 39-3). The facts are undisputed unless otherwise noted.

Defendant State Farm issued Homeowners Policy 87-EF-S188-7 to plaintiff Ashlee Varela for the policy period commencing September 24, 2018 through September 24, 2019 ("the Policy"). (JUF at ¶ 3.) The Policy insured the premises at 4664 N. Kavanagh Avenue in Fresno, California. (*Id.*) The Policy states in pertinent part:

> SECTION I–LOSSES INSURED
>
> COVERAGE A–DWELLING
>
> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I – LOSSES NOT INSURED
>
> …
>
> SECTION I – LOSSES NOT INSURED
>
> …
>
> 4. We do not insure under any coverage for any loss which is caused by one or more of the items below, regardless of whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces or occurs as a result of any combination of these:
>
> …
>
> c. Water Damage, meaning:
>
> (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;
>
> (2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or
>
> (3) *water below the surface of the ground*, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

(JUF at ¶ 4; Doc. No. 34-7 at 17–21) (emphasis added).

In November of 2018, a water supply line in plaintiff's home broke, causing water damage. (Doc. No. 38-2 at 2.) The parties dispute whether the water supply line was under the

2

slab foundation of plaintiff's home or in a trench backfilled with sand ("fill"). (*Id.*) Defendant began a coverage investigation and issued a reservation of rights on December 6, 2018 "because the loss may have been 'caused by water below the surface of the ground,'" a loss that defendant contends is excluded from coverage under the Policy. (JUF at ¶ 1.) Defendant requested to access the broken pipe through the slab to see if any circumstances existed which would render the exclusion for loss caused by water below the surface of the ground inapplicable. (Doc. No. 39-3 at 7.) Specifically, defendant intended to look to see if the pipe was in the foundation or in fill (gravel, stone or sand 12 inches directly below the slab), because if so it would not be part of the natural surface of the ground. (*Id.* at 6, 7.) Defendant informed plaintiff that if the pipes were in soil, and not in fill or in the foundation, the loss would not be covered, and defendant would accordingly not pay to repair any damage to plaintiff's home that would result from the investigatory testing. (Doc. No. 39-3 at 7.)

Defendant did not conduct the inspection, asserting that plaintiff refused to allow it to access the pipe through the foundation of the home and "the claim was denied based on Plaintiff's non-cooperation and material breach of 'Duties After Loss' conditions of the policy." (Doc. Nos. 34-1 at 10; 34-11 at 17.) Plaintiff asserts, and defendant does not contest, that in connection with the request for testing, defendant required plaintiff to sign work authorization forms consenting to "have State Farm's chosen vendors PW Stephens and Olsen Construction perform the testing." (PSDF at ¶ 22.) Defendant provided the forms to plaintiff the day before the date it scheduled for the testing. (*Id.* at ¶ 23.) In response to defendant's request for testing and its requirement that plaintiff sign the work authorization forms, plaintiff Varela requested additional time to consult with an attorney. (*Id.* at ¶ 23.) The next day, defendant denied plaintiff's claim in its entirety based upon the aforementioned claimed non-cooperation of plaintiff. (*Id.* at ¶ 26.)

**PROCEDURAL BACKGROUND**

Plaintiff filed this action against defendant on May 7, 2019, asserting a single cause of action for breach of the covenant of good faith and fair dealing based on defendant's refusal to afford policy benefits for repairs and loss of use. (Doc. No. 1 at 7.)

/////

On February 19, 2021, defendant filed the pending motion for summary judgment. (Doc. No. 34.) Defendant's motion is not premised on the purported non-cooperation of plaintiff. Rather, defendant argues that it is undisputed that the broken water line was below the surface of the ground and that the "water below the surface of the ground" exclusion in the Policy therefore applies. (Doc. No. 34-1 at 10.) Plaintiff filed her opposition to the pending motion for summary judgment on March 23, 2021. (Doc. No. 38.) Defendant filed its reply thereto on March 30, 2021. (Doc. No. 39.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted,

"so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party also must demonstrate the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d

898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

## DISCUSSION

Defendant moves for summary judgment in its favor on plaintiff's claim for breach of the covenant of good faith and fair dealing.  (Doc. No. 34-1 at 20.)  Defendant argues that plaintiff's losses incurred as a result of the water damage are not covered by the Policy, and that "[i]n the absence of a loss which is covered under the insurance policy, there is no breach of contract."  (*Id.*) (citing *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-03213-JST, 2020 WL 5525171, at *7 (N.D. Cal. Sept. 14, 2020)).  Furthermore, defendant asserts that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing.  (*Id.*) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008)).

Defendant's motion for summary judgment presents a single question:  whether, as a matter of law, the "water below the surface of the ground" exclusion appearing in the Policy applies to water bursting from a broken plumbing pipe underneath the concrete slab of the home's foundation.  (Doc. No. 34-1 at 4.)  The parties also argue over several other issues, including whether or not the plumbing pipe was in "fill" underneath the foundation and thus not underground.  However, because the court's interpretation of the "water below the surface of the ground" exclusion is dispositive with respect to resolution of the pending motion, the court concludes that it need not address those other arguments in this order.

**A.     Standard for Insurance Contract Interpretation**

"When determining whether a particular policy provides a potential for coverage . . . [courts] are guided by the principle that interpretation of an insurance policy is a question of law."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  Under California law, plaintiff, as the insured, "has the burden of establishing that a claim, . . . is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies."  *Minkler v. Safeco Ins.*

1    *Co. of Am.*, 49 Cal.4th 315, 322 (2010). Accordingly, here defendant shoulders the burden of
2    establishing that the water damage exclusion of the policy applies, as well as the burden of
3    establishing its entitlement to summary judgment.

4    "The fundamental rules of contract interpretation are based on the premise that the
5    interpretation of a contract must give effect to the 'mutual' intention of the parties." *MacKinnon*
6    *v. Truck Ins. Exch.*, 31 Cal.4th 635, 647 (2003). "If contractual language is clear and explicit, it
7    governs." *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1784
8    (1993) (quoting *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992)). "Thus, if the
9    meaning a lay person would ascribe to contract language is not ambiguous, we apply that
10   meaning." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949–50 (9th
11   Cir. 2002) (citing *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990)). "A contract term
12   will be considered ambiguous when it is capable of two or more constructions, both of which are
13   reasonable. But 'courts will not strain to create an ambiguity where none exists.'" *Westport Ins.*
14   *Corp. v. N. Cal. Relief*, 76 F. Supp. 3d 869, 879 (N.D. Cal. 2014) (quoting *Waller*, 11 Cal.4th at
15   18–19). "In the insurance context, we generally resolve ambiguities in favor of coverage." *AIU*
16   *Ins. Co.*, 51 Cal.3d at 822. "Coverage clauses are interpreted broadly so as to afford the greatest
17   protection to the insured, while exclusion clauses are interpreted narrowly." *TBG, Inc. v.*
18   *Commercial Union Ins. Co.*, 806 F. Supp. 1444, 1446 (N.D. Cal. 1990); *Mosten Mgmt. Co. v.*
19   *Zurich-Am. Ins. Grp.*, 89-cv-3475-SBA, 1992 WL 685749, at *7 (N.D. Cal. June 19, 1992) ("[I]t
20   has long been the law in California that coverage clauses are broadly construed so as to afford the
21   greatest possible protection to the insured and exclusionary clauses are interpreted narrowly
22   against the insurer.").

23   "In the insurance context, we begin with the fundamental principle that an insurer cannot
24   escape its basic duty to insure by means of an exclusionary clause that is unclear." *Haynes v.*
25   *Farmers Ins. Exch.*, 32 Cal.4th 1198, 1204 (2004) (internal quotation marks omitted). However,
26   "[i]t must be kept in mind that an insurer is free to select the character of the risk it will assume"
27   and an insurer "has the right to limit the coverage of a policy issued by it and when it has done so,
28   the plain language of the limitation must be respected." *Fresno Econ. Imp. Used Cars, Inc. v.*

1  *U.S. Fid. & Guar. Co.*, 76 Cal. App. 3d 272, 280 (1977) (quoting *Cont'l Cas. Co. v. Phoenix
2  Constr. Co.*, 46 Cal.2d 423, 432 (1956)).

3  **B.     Whether "Water Below the Surface of the Ground" Is Unambiguous**

4        Defendant argues that the Policy explicitly excludes coverage for any water damage
5  caused by water that is under the surface of the ground. (Doc. No. 34-1.) In defendant's view,
6  this is the case no matter what the source of that water is and no matter how the water ended up
7  underground. (*Id.*) The primary basis for defendant's argument is that the Policy states "[w]e do
8  not insure under any coverage for any loss which is caused by one or more of the items below,
9  regardless of whether the event . . . arises from natural or *external* forces . . . ." (Doc. No. 34-7 at
10 20) (emphasis added). Under the Policy, subsurface water damage is then included as one of the
11 "items below." (*Id.* at 21.) Defendant contends that the inclusion of the term "external" is "an
12 express broadening of the exclusion beyond merely natural causes." (Doc. No. 34-1 at 13.)
13 Consistent with this view, defendant concludes that because the broken pipe was allegedly
14 underground, any water damage caused by the broken pipe would be excluded from coverage
15 under the Policy.

16       In her opposition, plaintiff argues that a reasonable layperson would read the "water
17 below the surface of the ground" exclusion to be limited to natural water below the ground and
18 "would not conclude the exclusion covers water released from a plumbing system that is part of
19 the insured structure." (Doc. No. 38 at 20.) Plaintiff contends that by way of her "all-risk"
20 coverage, the policy covers damages caused by water released from a break in the plumbing, even
21 if the plumbing happens to be located underground. (*Id.* at 8, 20.) Plaintiff points out that the
22 other exclusions in the Policy that pertain to the plumbing system are substantially clearer and
23 more explicit. (*Id.* at 20.) For example, the Policy excludes continuous or repeated seepage or
24 leakage of water or steam from a plumbing system; the policy also excludes "water or sewage
25 from outside the residence premises plumbing system that enters through sewers or drains;" and
26 the policy specifically excludes coverage for losses caused by "discharge, leakage or overflow
27 from within the [plumbing] system or appliance *caused by freezing*." (*Id.*) (emphasis added).
28 Plaintiff concludes that in comparison to the exclusions that apply directly to plumbing systems,

8

"the lay insured is left to conclude that the [water below the surface of the ground] exclusion is *not* aimed at water released from failed plumbing lines." (*Id.*)  This is in part because the Policy does indeed cover "[s]udden and accidental discharge or overflow of water or steam from within" a plumbing system.  (Doc. No. 34-7 at 18.)

The court finds defendant's argument that the Policy unambiguously excludes any water damage caused by water under the surface of the ground, regardless of the water's source, to be unpersuasive.  In addressing a similar policy exclusion, the district court in *Ahluwalia v. Allied Property & Casualty Insurance Co.*, No. 2:10-cv-00712-MCE, 2012 WL 2681801 (E.D. Cal. July 6, 2012) defined water under the surface of the ground more narrowly than defendant does here.  The policy in *Ahluwalia* excluded "[w]ater under the ground surface pressing on, or flowing or seeping through:  a) Foundations, wall, floors or paved surfaces; b) Basements, whether paved or not; or, c) Doors, windows or other openings." *Id.* at *8.  The district court in *Ahluwalia* held that the water under the ground exclusion was unambiguous because the exclusion itself "explicitly [defined] ground water as '[w]ater under the ground surface' [and this] is consistent with the common definition of ground water, which is commonly defined as water beneath the earth's surface." *Id.* (citing Webster's Third New International Dictionary 995 (2002) ("Water within the earth that supplies wells and springs; *specif*: water in the zone of saturation where all openings in rocks are filled, the upper surface of which forms the water table."); Black's Law Dictionary 1729 (9th Ed. 2004) ("Water found in layers of permeable rock or soil.")); *see also Nationwide Ins. Co. v. Warren*, 675 S.W.2d 402, 403 (Ky. Ct. App. 1984) ("[W]e believe it more logical to consider 'water below the surface of the ground' as meaning such things as underground streams, springs, or natural deposits of liquid[.]").

The court notes that the policy at issue in *Ahluwalia* was quite similar to defendant State Farm's policy here.  Specifically, the policy in *Ahluwalia* provided:

> B. Exclusions
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other causes or event that contributes concurrently or in any sequence to the loss.

9

…

g. Water.

…

4) Water *under the ground surface* pressing on, or flowing or seeping through:

a) Foundations, wall, floors or paved surfaces;

b) Basements, whether paved or not; or,

c) Doors, windows or other openings.

*Id.* at *4–5 (emphasis added).  The policy's language that the insurer in that case would not cover losses associated with damage caused directly *or indirectly* is akin to State Farm's policy exclusion here for "natural or external forces."

The district court in *Ahluwalia* found the water under the surface of the ground provision to unambiguously refer to "water within the earth that supplies wells and springs." *Id*. at *8 (Webster's Third New International Dictionary 995 (2002)).  Yet, defendant here unconvincingly asserts that the quite similar exclusion language in the Policy at issue in this case unambiguously refers to water of any kind under the ground.  The court rejects this argument.  Quite simply, a lay person would not understand water from a broken plumbing pipe to be akin to "water within the earth that supplies wells and springs."

**C.     How a Reasonable Insured Would Interpret the "External Forces" Exclusion**

Ambiguous exclusionary provisions must be construed in plaintiff's favor in light of the well-recognized principle that "exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon*, 31 Cal.4th at 648 (quoting *White v. Western Title Ins. Co*., 40 Cal.3d 870, 881 (1985)).  Thus, if a reasonable insured could interpret the Policy as providing coverage for a loss, that interpretation is to be adopted by the court.  *See Doble v. Mega Life & Health Ins. Co.*, No. C 09-1611 CRB, 2010 WL 3702441, at *1 (N.D. Cal. Sept. 15, 2010).

A reasonable interpretation of this insurance policy could lead an insured to conclude that the reference to losses arising from "natural or external forces" means the forces *applied to* the water and not to the source of the water itself.  In other words, the "external forces" exclusion

10

does not mean that any losses caused by water that ends up under the ground and then causes damage are excluded from coverage. Rather, "external forces" in this context refers to the force that causes *natural* water under the ground to damage the dwelling. An example illustrating the difference between external and natural forces, using the definition of groundwater as adopted by the court in *Ahluwalia*, would be the following. If plaintiff's home had a deposit of natural groundwater under it and a neighbor decided to drill for oil on their own property, causing that deposit of groundwater to breach into plaintiff's home, that would be an external force. In that example, an external force is applied to natural groundwater, which then caused damage. Likewise, if groundwater were pushed up through plaintiff's foundation by natural earthly forces, absent any external force, that too would be excluded under the "natural forces" portion of the exclusion provision. Thus, the use of the term "external" is not superfluous.

It is not unexpected that insurers in California, like State Farm, would include the term "external" in their policies without referring to non-natural groundwater. The leading California case demonstrates why. In *State Farm Fire & Casualty Co. v. Von Der Lieth*, 54 Cal.3d 1123, 1133 (1991), the insureds suffered damage from groundwater. The insureds argued that although their policy's groundwater exclusion applied to water damage caused by natural water below the surface of the ground, that exclusion did not apply to "the artificially high level of groundwater that followed the housing development." *Id.* The California Supreme Court agreed and held that the natural water exclusion did not preclude coverage because while the exclusion applied to natural water conditions, it did not apply to underground water resulting from third-party negligence. *Id.* Specifically, plaintiff's "blamed a local homeowners' organization for its failure to maintain its drain systems and county-required pumping systems (specifically designed to prevent rising *groundwater*), and other homeowners for their failure to properly maintain their septic tank systems so that the systems did not affect the *groundwater* level." *Id.* at 1128 (emphasis added). In this way, the plaintiffs in *Von Der Lieth* blamed external forces (the alleged negligence of the homeowners' organization and the other homeowners) for causing rising natural groundwater, and the California Supreme Court agreed that the normal natural groundwater

/////

11

exclusion therefore did not apply in that case.[1]  Accordingly, the inclusion of the "external forces" clause in the policy at issue in this action squarely follows the history of water below the surface of the ground damage liability in California.  Naturally, an insurer like State Farm would want to exclude damages caused by a third-party's negligence to avoid coverage liability for losses caused by such external forces based on the holding in *Von der Lieth*.

Defendant's own explanation of the term "external" supports the court's conclusion.  Defendant cites the decision in *Freedman v. State Farm Insurance Company*, 173 Cal. App. 4th 957, 964 (2009), arguing that in that case "the California Court of Appeal identified someone driving a nail through a pipe as an example of 'external forces' as that term is used in the State Farm water damage exclusion."  (Doc. No. 34-1 at 13.)  Defendant's explanation, however, is consistent with the California Supreme Court's holding in *Von der Lieth* in that an external third party provided the force that caused the harm, as opposed to external referring to where the pipe was located or where the water causing the damage came from.  *See Freedman*, 173 Cal. App. 4th at 964 ("The policy thus expressly provides that leaks are excluded regardless of whether they are caused by natural forces such as normal deterioration or external forces such as a nail driven through a pipe.").  Thus, in the example provided by the court in *Freedman,* what was external was not the pipe, but the nail.

Moreover, here, the Policy covers "[s]udden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance."  (Doc. No. 34-7 at 18.)  That a policy would cover a sudden discharge or burst of water from a plumbing or heating system, but only to the extent the plumbing pipe is above ground, and yet not provide coverage for discharged water from the portions of that pipe that are located underground, would truly be an unreasonable interpretation of the Policy's language.  *See Broome v. Allstate Ins. Co.*, 144 Ga. App. 318, 319

---

[1]  Notably, the California Court of Appeal in *Von der Lieth* had concluded that the language of the exclusion "was meant to distinguish between groundwater, an excluded risk, and 'water emitting from a burst pipe,' a covered risk."  54 Cal.3d at 1130.  In reversing, the California Supreme Court adopted an even narrower definition by declining to exclude from coverage even losses caused by natural groundwater impacted by the actions of third parties.

(1977) (concluding that a "water below the surface of the ground" exclusion did not apply to a burst pipe where another section of the insurance policy specifically dealt with coverage with respect to water from a plumbing system and that section made no mention of subsurface water).

Accordingly, the court concludes that a reasonable insured could interpret the Policy as only excluding coverage with respect to damage caused by natural water from under the surface of the ground. Given this reasonable interpretation, the court cannot say that the Policy unambiguously applies to all water under the ground regardless of its source. Therefore, interpreting the ambiguous Policy against the defendant insurer, as it must, the court concludes that the exclusion relied upon by defendant here does not apply to plaintiff's claimed loss. *See MacKinnon*, 31 Cal.4th at 648.

**D.     Whether This Case Is Distinguishable from Those Defendant Cites**

Defendant points to several opinions, including two from California, that adopted the interpretation defendant seeks here with respect to the "water below the surface of the ground" exclusion. *See, e.g.*, *Ruffin Rd. Venture Lot IV v. Travelers Prop. Cas. Co. of Am.*, No. 10-cv-11-JM-WVG, 2011 WL 2463291, at *3 (S.D. Cal. June 20, 2011); *Ken Tu v. Dongbu Ins. Co., Ltd.*, No. 17-cv-03495-JSC, 2018 WL 4219238, at *7 (N.D. Cal. Sept. 5, 2018). However, the undersigned does not find those opinions persuasive in light of the analysis set forth above. The decision in *Ruffin Rd. Venture Lot IV*, concluded that a straightforward reading of the policy terms in that case supported the subsurface water exclusion's application to a burst pipe, but the decision did not provide any analysis to support that conclusion. 2011 WL 2463291, at *3. Similarly, the decision in *Ken Tu* concluded that discharge from a sewer line that was under the ground would not be covered because "a straightforward reading of the Policy excludes coverage for damage caused by subsurface water, even if the floor was Covered Property[.]" 2018 WL 4219238, at *7 (citing *Ruffin Rd. Venture Lot IV*, 2011 WL 2463291, at *3). Again, the court in *Ken Tu* provided no explanation or analysis to support its conclusion, instead merely relying on the decision in *Ruffin Rd. Venture Lot IV*. *Id.*

/////

/////

Defendant also cites the Third Circuit's decision in *Colella v. State Farm Fire and Cas. Co.*, 407 Fed. App'x 616 (3rd Cir. 2011)[2] for the proposition that language used in a phrase immediately preceding the stated exclusion in an insurance policy (i.e., a "lead-in" clause), can be instructive in determining the scope of that exclusion. (Doc. No. 34-1 at 19.) Specifically, in *Colella*, State Farm argued that the words "regardless of cause" in the lead-in clause preceding the exclusion for damages caused by water below the surface of the ground meant that it did not matter what caused the water to come from below the ground so long as the water was below the ground. *Colella*, 407 Fed. App'x at 621.[3] The Third Circuit agreed with State Farm's argument and concluded that it "[saw] no way to interpret the words 'regardless of cause' in a manner that provides coverage for the [plaintiffs]." *Id.* In reaching this decision, the Third Circuit relied on a Colorado state appellate court opinion, which held that "[t]he plain language of the policy excludes any loss from water below the surface of the ground that leaks through a foundation, regardless of cause and regardless of whether or not the water arises from natural or external forces." *Id.* (quoting *Thompson v. State Farm Fire & Cas. Co.*, 165 P.3d 900 (Colo. App. 2007)). These decisions and their reasoning would perhaps be arguably applicable here if the exclusion for all water damage in Section I(4)(c) of the Policy contained the lead-in clause "regardless of cause." However, it does not. (Doc. No. 34-7 at 20.) Although the proceeding Section I(3) contains a lead-in clause that states State Farm does not insure regardless of "the cause of the excluded event," that provision clearly applies only to the enumerated excluded events of earthquakes and nuclear hazards. (*Id.*) In contrast, the lead-in clause for the water damage exclusions in Section I(4)(c) merely states "[w]e do not insure under any coverage for any loss

---

[2] Citation to this unpublished Third Circuit opinion is appropriate pursuant to Third Circuit Local Appellate Rule 28.3(a).

[3] Notably, other courts in both California and the Third Circuit have found that the underground water exclusion provision does not apply to situations like the one presented by the Policy in this case. *See, e.g.*, *Anderson v. USAA Cas. Ins. Co.*, No. 06-cv-07948-WHA, 2008 WL 619004, at *7 (N.D. Cal. Mar. 4, 2008) (finding that leakage from a radiant heating system did not constitute subsurface waters when the defendant insurance company claimed the exclusion applied); *Cozza ex rel. Cozza v. State Farm Fire and Cas. Co.*, 440 Fed. App'x 73, 75 (3rd Cir. 2011) (stating in *dicta* that water that escapes from a plumbing system is not excluded by the subsurface water exclusion).

which is caused by one or more of the items below, regardless of whether the event . . . arises from natural or external forces: . . . Water Damage, meaning . . . water below the surface the ground[.]" (*Id.*) The "regardless of cause" language is notably absent. Indeed, the Colorado appellate court in *Thompson* held that "because the exclusion precludes coverage for loss from water below the surface of the ground *from any cause*, we conclude that the exclusion is not limited to naturally occurring water or water from outside the plumbing system." *Thompson*, 165 P.3d at 902 (emphasis added). Unlike the lead-in clause in the policy in *Thompson*, the Policy in this action does not provide for an exclusion with respect to water damage "regardless of cause." Accordingly, State Farm's argument in this regard is unavailing.

The court readily acknowledges that there is some dispute among courts over whether the water beneath the ground exclusion "encompasses only underground water from natural sources, such as precipitation, or extends to water from artificial sources, such as broken pipes." Subsurface water, 11 Couch on Ins. § 153:58. "Some courts hold that the exclusion only applies to damage from natural sources of subsurface water." *Id.* (citing *Broome*, 144 Ga. App. at 319); *see also Nationwide Ins. Co.*, 675 S.W.2d at 403. Other courts consider damage from water below the surface of the ground "to fall within the exclusion regardless of the character of the water's source." *Id.* (citing *Buttelworth v. Westfield Ins. Co.*, 41 Ohio App. 3d 288, 289 (1st Dist. Hamilton County 1987)). Nonetheless, in light of the context of the exclusion here with respect to the other sections in the Policy dealing with plumbing (*See Broome*, 144 Ga. App. at 319); the history of this particular issue in California (*see Von Der Lieth*, 54 Cal.3d at 1133); the lack of a lead-in clause barring coverage "regardless of cause" (*see Colella*, 407 Fed. App'x at 621); and the absence of any explicit language in the Policy stating otherwise, the court cannot say that this Policy unambiguously excludes coverage with respect to damage from underground plumbing pipes.

The parties have not cited, and the court has not found, any binding precedent with respect to the interpretation of the "water below the surface of the ground" exclusion that appears in this Policy. In the end, the court is persuaded by the interpretation given to the exclusions in *Broome*, *Nationwide Insurance Company*, and *Kokhan*. In *Broome*, a burst pipe's damage was not

15

excluded because other sections of the policy clearly and specifically dealt with plumbing damage, as is the case here. *Broome*, 144 Ga. App. at 319. In *Nationwide Insurance Company*, the court found it more logical to consider water below the surface of the ground as "meaning such things as underground streams, springs or natural deposits of liquid which are undetectable and any damage that they may cause as unforeseeable." *Nationwide Ins. Co.*, 675 S.W.2d at 403–04. In *Kokhan*, the court found the "water below the surface of the ground" exclusion to refer to only naturally occurring water based in part on the context of the other four "water damage" exclusion subsections in the policy at issue, "all of which also plainly [referred] to naturally-flowing water or waterborne material or substances existing outside of the plumbing system." *Kokhan v. Auto Club Ins. Co. of Fl.*, 297 So.3d 570, 575 (Fla. Dist. Ct. App. 2020). As in *Kokhan*, the other water damage exclusions in plaintiff Varela's policy refer only to natural water or water outside the plumbing system. In this regard, Section I(4)(c)(1) defines excluded water damage as "floods, surface water, waves, tidal water, tsunami, [and] seiche" and Section I(4)(c)(2) defines excluded water damage as "water or sewage from *outside the residence premises plumbing system* that enters through sewers or drains[.]" (Doc. No. 34-7 at 21) (emphasis added). Indeed, arguably, the policy in *Kokhan* was even more restrictive in terms of coverage than plaintiff Varela's policy because it excluded damage "however caused." *Kokhan*, 297 So.3d at 576. At the very least, the court concludes that the terms used in the Policy at issue here are ambiguous and must be construed in plaintiff's favor because under California law "exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon*, 31 Cal.4th at 648. If defendant State Farm had wished to exclude from coverage water damage caused by burst plumbing pipes beneath plaintiff's home, it could have done so explicitly and clearly, just as it did with respect to the other provisions related to plumbing in the Policy. (*See, e.g.*, Doc. No. 34-7 at 20 (stating that "continuous or repeated seepage or leakage of water or steam from a . . . plumbing system" is not covered, including a plumbing system in their "walls, ceilings or floors.")). Here, it is undisputed that the damage was caused by a burst pipe and not by any water naturally occurring below the ground. (*See* Doc. Nos. 1 at 3; 34-1 at 14; 38 at 9.)

/////

Defendant has not shown that, as a matter of law, the exclusion in the Policy with respect to damage caused by water below the surface of the ground unambiguously applies to plaintiff's claim for insurance coverage. The court finds that here the exclusion is far too vague to allow the adoption of the defendant insurer's interpretation and must instead be interpreted in plaintiff's favor. *See State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193, 201–02 (1973) (finding that an exclusionary provision must be conspicuous, plain, and clear in order to relieve the insurer of liability). Because the exclusion does not unambiguously apply here, plaintiff's sustained loss as a result of damage from the broken pipe beneath her home is not excluded from coverage under the Policy. *See Admiral Ins. Co. v. Kay Automotive Distributors, Inc.*, 82 F. Supp. 3d 1175, 1181 (C.D. Cal. 2015) (stating "interpretive canons favor resolving the ambiguity against the insurer and in favor of coverage"). Because defendant has failed to negate any essential elements of plaintiff's claim for breach of the covenant of good faith and fair dealing, the court will deny defendant's motion for summary judgment.[4]

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment (Doc. No. 34) is denied. The parties are directed to contact Courtroom Deputy Jami Thorp at (559) 499-5652, or JThorp@caed.uscourts.gov, within ten days of service of this order regarding the re-scheduling of the Final Pretrial Conference and Jury Trial dates in this action.

IT IS SO ORDERED.

Dated:   **August 16, 2021**

UNITED STATES DISTRICT JUDGE

---

[4] Among the other elements necessary for plaintiff to establish a breach of the covenant of good faith and fair dealing is that she must show that "the defendant unfairly interfered with [her] rights to receive the benefits of the contract." *See Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). Neither party has moved for summary judgment or presented evidence as to this issue and the court therefore cannot yet rule on this element of plaintiff's claim.